UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.: 2:08-CR-136 PS |
| | ) | |
| MARLON K. SPEARS | ) | |

## OPINION AND ORDER

This matter is before me on Defendant Marlon Spears' Supplemental Motion to Suppress. (DE 69.) After holding a *Franks* hearing, I stated on the record that I was not convinced that the warrant included any material false statements that were made knowingly and intentionally, so I denied the motion. This order reduces my decision to writing.

## Background

On August 1, 2008 Agent Nicole Duncanson obtained a search warrant for 714 Willow Court, Hammond, Indiana, seeking evidence of an indoor marijuana grow operation. (DE 35-2.) In her warrant affidavit, Duncanson relied on a confidential source who saw the operation, state troopers with whom she conducted a trash pull outside the subject residence, and excessive electricity usage at the house reported by the electric provider, NIPSCO. (*Id.*) The subsequent search revealed 555 marijuana plants, 550 grams of processed and packaged marijuana, a rifle, and 700 rounds of ammunition. (DE 41, at 3.)

Over a year ago, Spears filed an Amended Motion to Suppress, claiming that the warrant was void because the warrant affidavit contained false statements. Spears requested a *Franks* hearing to offer testimony to show that there were false statements relating to the confidential source, the trash pull, the CS's statements relating to the presence of PVC piping outside the

1

residence, and the NIPSCO information. I denied Spears' Amended Motion to Suppress and request for a *Franks* hearing because Spears did not make the substantial preliminary showing that the affidavit contained false statements made knowingly and intentionally, or with reckless disregard for the truth. (DE 52.) Spears filed a Motion for Reconsideration, which I also denied. (DE 54.)

This case was set for trial on June 14, 2010. But at the May 21, 2010 pretrial conference, the Government produced new documents to Spears' counsel. One document was an FBI FD-302 prepared by Agent Duncanson. (DE 73-2.) In that report, Duncanson stated that she got the information about utility usage from FBI Intelligence Analyst Randall T. Strapon. (*Id.*) Yet in the warrant affidavit, Duncanson said that she obtained the information about utility usage directly from NIPSCO and not in a second-hand way from Strapon. (DE 35-2, at 8.) In addition, the Government produced another FD-302 from Agent Robert Hall, who reported the details of an interview with NIPSCO employees William Grimes and Karen Bruce. (DE 73-5.) This report called into question how Strapon could have gotten the information from NIPSCO without a subpoena. Because my July 2009 decision to deny the *Franks* hearing was somewhat of a close call, and because the recently produced information led me to believe that there were potentially some inaccuracies in the affidavit, I decided to conduct a *Franks* hearing. I held a day-long hearing, permitting Spears to introduce evidence supporting his claim that there were material false statements or omissions in the warrant affidavit.

## Discussion

Before pointing out allegedly false statements in the affidavit, Spears' Supplemental Motion to Suppress argues that Spears was denied equal protection. I'll deal with that issue first.

2

Spears claims that the trash pull violated his rights under the Indiana Constitution, and that the federal warrant denied him equal protection because he received less privacy than similarly situated state defendants. (DE 69, at 2.) He claims that the trash pull was actually a state investigation made to look like a federal investigation because State Trooper James Sample was involved in the trash pull and he knew that the trash pull violated Indiana Constitutional law. Under Indiana law, "articulable individualized suspicion" is needed prior to conducting a trash inspection. *Litchfield v. State*, 824 N.E.2d 356, 364 (Ind. 2005). Spears' theory is that the officers knew that they violated state law, so they made it look like it was a federal case where the trash pull was perfectly permissible

The hearing revealed that Agents Duncanson, Adam Clark, and Gerald Michalak all had been federally deputized, and a formal FBI investigative file was opened on Spears prior to the trash pull. (FBI Request to open sub-file, DE 72-3.) Trooper Sample was involved only because of his prior experience with marijuana grow operations. I'm not convinced that this was ever a state investigation. And even if I was, Agent Duncanson had articulable individualized suspicion, in any event. Duncanson received a tip from her CS about the marijuana grow operation, and she confirmed that the location of the operation was 714 Willow Ct. by driving by the residence with the CS. Because this was a federal case all along and Spears hasn't shown that he was treated differently from similarly situated individuals, his equal protection claim goes nowhere.

I'll turn now to evaluating the testimony at the *Franks* hearing. When a court permits a *Franks* hearing, the defendant has the burden to prove by a preponderance of the evidence that the statements in the warrant affidavit are false and that the statements were made knowingly and

3

intentionally or with a reckless disregard for the truth.  *Franks v. Delaware* 438 U.S. 154, 156 (1978)**.**  After the defendant meets that burden, if the court concludes "that with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id***.**

At the hearing, Spears pointed to four sections in the warrant affidavit that allegedly contain false statements material to Magistrate Judge Rodovich's probable cause finding: (1) the trash pull; (2) the PVC piping surrounding the outside of the house; (3) the information obtained from NIPSCO; and (4) Mr. Spears' criminal history.  I'll address each separately.

    **1.**    **Trash Pull**

Spears argues that Duncanson misled the court when she described in the affidavit about which agent found what items during the trash pull.  In the warrant affidavit, she states the following about the results of the trash pull:

> Trooper Sample located a fresh, green/brown, pliable plant stem in the trash. Trooper Michalak and Trooper Sample immediately recognized the stem to be from a marijuana plant (based on the size, shape, texture and pliability of the stem).
> ....
> In addition to the fresh green/brown stem of marijuana, I recovered an empty package from an "Aqua Culture" aquarium bubble stone.
> ....
> I also recovered an empty "Tetra Whisper Aquarium Heater" box in the trash. Aquarium heaters are used to heat the irrigated water to a high enough temperature so that the fertilizers and minerals are able to dissolve and be absorbed into the marijuana plants' root systems.
> I also found ten gray plastic circular discs (approximately 2 inches in diameter) in the trash.

(DE 35-2, at 8.)  Agent Michalak, Trooper Sample, and Agent Duncanson each testified about the trash pull that took place on July 31, 2008.  Agent Clark was also present at the trash pull,

but he didn't testify at the *Franks* hearing. Michalak, Sample, and Duncanson each testified that they conducted the trash pull at approximately 5:00 a.m. on July 31, 2008. They each stated that immediately following the trash pull, Trooper Sample and Agent Michalak went to another location, and returned to Hammond police station, where Duncanson and Clark brought the trash. But certain details of their testimony differed.

Agent Michalak testified that Duncanson and Clark began looking through the trash before he and Sample arrived at the Hammond police station. He testified that he didn't remember who recovered the marijuana stem. Sample testified that he located the marijuana stem, and identified the aquarium bubble stone package and plastic discs. He couldn't recall exactly what Duncanson and Clark had gone through before he arrived, but he confirmed the statements in the affidavit about the marijuana stem. Duncanson testified that while Michalak and Sample were gone, she and Clark began sorting through the trash, but she didn't identify anything related to a marijuana grow operation until Michalak and Sample returned. She testified that Sample identified the marijuana stem and told her that the aquarium bubble stone package and water heater box were often used in marijuana grow operations.

Spears argues that the statements about the trash pull are lies because the officers' testimony was inconsistent regarding who found the marijuana stem, and because Duncanson doesn't attribute the knowledge about the items they found to Trooper Sample. But that doesn't rise to the level of a *Franks* violation. *See U.S. v. Causey*, 9 F.3d 1341, 1343-44 (7th Cir. 1993) (affirming district court's finding that there was no *Franks* violation because the false information did "not go to the substance of the allegations in the warrant complaint"). These minor variations in who found what can in no way be characterized as intentional lies. This is

5

especially true given that Duncanson stated the following in the affidavit: "The information contained in this affidavit is based upon my firsthand knowledge and the information provided by other law enforcement officers and witnesses." (DE 35-2.) The important thing is that the agents all consistently said that they found a marijuana stem in the trash along with aquarium bubble stone and an empty aquarium heater box, all of which is strong evidence (when combined with what the CS said) to suggest that a marijuana grow operation was going on inside the residence. There was no *Franks* violation relating to the statements about the trash pull.

   2.     **PVC Piping**

At the hearing, Spears' argued that the warrant affidavit's statement that the CS informed Duncanson that PVC piping around the side of 714 Willow Ct. is false and constitutes a *Franks* violation. In the warrant affidavit, Duncanson states:

> The CS advised that he/she had been in the basement of **The Premises** and has observed the hydroponic marijuana growing operation, which consisted of, among other things. . . PVC piping routing from the basement to the exterior of the residence, and other items directly related to the hydroponic marijuana growing operation. The CS further advised that the PVC piping on the outside of the house was routed our from the basement and spray painted black.

(DE 35-2, at 6.) Agent Duncanson testified at the hearing that after the CS told her this information, she and the CS drove by the residence. She stated that she was unable to verify with certainty whether the piping she saw outside the house was PVC piping because there were large dogs in the yard that kept her from inspecting the side of the house closely without being noticed.

Spears argues that these statements in the affidavit are false, but he didn't present any facts that actually show that the CS did not observe PVC piping. Rather, Spears admitted photos of the side of the house taken in 2009, well after the warrant was executed. (Hrg. Exhs. I, J, K,

6

L.) To effectively show that the warrant statements were false, Spears needed to show that Agent Duncanson knew or should have known that the CS was lying about the PVC piping. A photo taken after the search occurred falls far short of showing that Duncanson knowingly disregarded the truth. From my review of the photos admitted at the hearing, it seems clear that the CS was likely mistaken about there being PVC piping coming from the home. While the photos reveal that there was in fact piping coming from the home, it doesn't appear to be PVC piping. But this is beside the point. All that matters is what Agent Duncanson knew, not what the CS knew or thought. And I credit Duncanson's testimony that she was unable to confirm what the CS said about the PVC piping. So if the CS happened to be wrong about the existence of the PVC piping, it really doesn't matter. Thus, the statements in the warrant affidavit related to the PVC piping are not void either.

### 3. NIPSCO Information

The third portion of the warrant affidavit that Spears challenges is the statement that 714 Willow used a higher amount of electricity than other houses of that size. Here's what Duncanson said on this issue in her affidavit in support of the search warrant:

> On July 31, 2008, I received information from NIPSCO, the Northern Indiana Public Service Company, that the electricity service at **The Premises** is listed in the name of **Marlon Spears.** NIPSCO also reported that the normal usage of electricity for a residence of this size is 500-650 kilowatts per month. However, NIPSCo further reported the actual, average monthly usage for the year of 2008 for **The Premises** was between 1200-1300 kilowatts. This excessive kilowatt usage is consistent with that of an indoor marijuana grow operation.

(DE 35-2, at 9.) As mentioned, the Government produced an FBI report Duncanson filled out stating that FBI intelligence analyst Randall Strapon actually obtained the information from NIPSCO and passed it on to her. (DE 73, at 3.) She did not receive the information directly

7

from NIPSCO as her affidavit suggests. So this was marginally misleading. But not really when one recalls that her affidavit also stated that the information contained in the affidavit "is based upon (Duncanson's) firsthand knowledge **and the information provided by other law enforcement officers** and witnesses." (DE 35-2 (emphasis added).)

It is true that Karen Bruce, a NIPSCO representative, testified at the *Franks* hearing that NIPSCO has a policy of not providing normal usage information measured in wattage without a subpoena. And Karen Bruce's August 13, 2008 letter to the FBI Analyst (Randall Strapon) indicates that NIPSCO did not receive a subpoena for the 714 Willow usage information until August 1, 2008 – after the search warrant was executed. (DE 73-4.) But this proves nothing except that Strapon may have a source at NIPSCO who violates company policy by providing him information on the Q.T. Indeed, Bruce acknowledged that there was no way of tracking whether a NIPSCO employee violated company policy.

Strapon credibly testified that for the past four and a half years he's been an analyst assigned to the FBI GRIT task force. He stated that he has a source who works inside NIPSCO who provides him with usage information without a subpoena, and that if the information proves to be useful, Strapon then follows it up with a subpoena to NIPSCO. That's exactly what occurred here. Strapon's source told him that the usage was very high at 714 Willow Ct., and Strapon passed that information along to Duncanson who then included it in the warrant affidavit. I credit both Duncanson's and Strapon's testimony in this regard.

Without testimony directly contradicting the information Strapon received from his NIPSCO contact, I can't conclude that the NIPSCO information he obtained was false, and, in turn, that Duncanson knew or should have known that it was false. Thus, the NIPSCO

statements stand as well.

### 4. Mr. Spears' Criminal History

The warrant affidavit did include a false statement as to Mr. Spears' criminal history. But because probable cause existed independent of this false statement, the warrant is still valid.

Spears argued that the following statement was false:

> I later ran a name search on "**Marlon Spears**." The search revealed that a "**Marlon Spears**" lives at **The Premises**. I also ran a criminal history check on that **Marlon Spears**, and found that he has a criminal history in the state of Indiana.

(DE 35-2, at 6.) At the hearing, Agent Duncanson admitted that Spears' prior conviction was not in Indiana, but was a sex offense that took place in 1995 in Wisconsin. So this statement that Spears has a "criminal history in the state of Indiana" was false. But it's clear that this was an error on Duncanson's part, not an intentional attempt to mislead.

What is somewhat misleading is the fact that the search warrant related to drugs, and the prior conviction was a sex offense, yet this wasn't disclosed. By vaguely saying he has a "criminal history" this could have misled the magistrate into believing that the prior offense was related to the potential crimes that were the subject of the search. It's not clear to me that someone with a prior record of a sex offense would be more apt to be involved in a marijuana grow operation. So by describing his prior history in a general way, it made it seem that his prior history was perhaps more germane to the probable cause calculus than in fact it was.

But even if this misleading statement had some weight in Judge Rodovich's evaluation of the warrant (and I tend to doubt it), the warrant doesn't fail without that piece of information. The warrant still stands independent of this statement because the information from the CS, the results of the trash pull, the CS's statements regarding the PVC piping, and the NIPSCO

information support a finding of probable cause. *Franks*, 438 U.S. at 156.

The Supplemental Motion to Suppress is therefore **DENIED**.

**SO ORDERED**.

ENTERED: June 28, 2010

                                                    s/ Philip P. Simon
                                                    PHILIP P. SIMON, CHIEF JUDGE
                                                    UNITED STATES DISTRICT COURT